# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MED JAMES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **Counterclaim** | ) | |
| **Defendant,** | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 05-2209-KHV |
| **INSURANCE MARKETING SOLUTIONS, INC.,** | ) | |
| **INSURANCE MARKETING SOLUTIONS, LLC.,** | ) | |
| **and DAVID RONNING,** | ) | |
| **Defendants,** | ) | |
| **Counterclaim** | ) | |
| **Plaintiffs.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On May 10, 2005, Med James, Inc. filed a petition in the District Court of Johnson County, Kansas (Case No. 05-CV-3685) against Insurance Marketing Solutions, Inc., Insurance Marketing Solutions, LLC and David Ronning. Med James sought a declaratory judgment declaring that defendants had breached a marketing agent agreement and that it was entitled to terminate that agreement and receive restitution. On May 17, 2005, defendants removed the case under 28 U. S. C. §1441(a), asserting diversity jurisdiction. Defendants filed counterclaims asserting breach of an implied covenant and promissory estoppel and seeking restitution and a declaratory judgment as to the parties' agreement. This matter comes before the Court on <u>Med James, Inc.'s Motion For Summary Judgment On Defendants' Counterclaims</u> (Doc. #11) filed October 27, 2005. For reasons set forth below, the Court finds that the motion should be overruled.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the

evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

The following facts are uncontroverted, or, where disputed, viewed in the light most favorable to defendants, the non-movants.

This action arises from a dispute between Med James, Inc., a general insurance agent, and David Ronning and related business entities, who acted as its marketing agent. Med James is a Kansas corporation with its principal offices in Overland Park, Kansas. Mr. Med James ("James") is president of Med James. Ronning is a resident of Arizona. Ronning started Insurance Marketing Solutions, LLC ("IMS, LLC"), a Missouri limited liability company, in late 1998. In 2001, Ronning organized Insurance Marketing Solutions, Inc. ("IMS"), a Missouri corporation with its principal place of business in Arizona.

In 1998, Melanie French, vice president and underwriting manager for Med James, approached Ronning about establishing a business relationship between Med James and Ronning. French suggested that Ronning become a marketing agent to expand to states beyond Kansas the Med James non-standard automobile insurance business.[1] Over a period of two years, Ronning gave French about $1,000 per month for introducing him to James. James found out about these payments, but he did not fire French and he continued the business relationship between Med James and Ronning.

In August or September of 1999, Med James received regulatory approval to market its

---

[1] The record contains evidence that French encouraged Ronning to negotiate a higher billing fee than normal and then give her half of each extra billing dollar.

insurance in Arizona. Ronning served as marketing agent for the program. In March or April of 1999, Ronning had given Med James a draft of a proposed written contract between Med James and IMS, LLC.[2] The proposed contract provided that Med James would pay IMS, LLC a 2.5 per cent commission and a billing fee of $2.00 for each sale in Arizona. The proposed contract provided that the parties could terminate it by mutual agreement at any time. It also provided that the contract would terminate immediately if Med James went into liquidation or became subject to serious disciplinary proceedings by a state insurance department, or if IMS, LLC violated the agreement. The proposed contract further provided that if Med James terminated the agreement for reasons other than those just recited, it would pay IMS, LLC a termination fee of 2.5 per cent of premium payments for 12 months beginning 30 days after termination. Ronning attempted to initiate contract discussions with Med James on many occasions after he submitted the proposed contract, but Med James never signed a contract with Ronning, IMS or IMS, LLC. The record contains evidence, however, from which a jury could find that Med James indicated that the terms of the proposed contract were acceptable.

In March of 2003, Ronning met with Jim Harris, a representative of Med James, to discuss Ronning's compensation. Harris gave Ronning a draft of a proposed contract which included a non-compete clause but not a termination clause. The parties continued to discuss various terms, but never executed a contract.

On February 28, 2005, Med James notified Ronning in writing that it was terminating the business relationship with Ronning, IMS, LLC and IMS.

---

[2] Defendants' counterclaims do not distinguish Ronning, IMS, LLC and IMS.

On May 10, 2005, Med James filed its petition in state court, seeking a declaration that defendants had breached the marketing agent agreement and that Med James was entitled to restitution and to terminate the agreement. Defendants removed the case to this Court and filed counterclaims seeking a declaratory judgment that Med James had agreed to pay commission payments for 12 months beginning 30 days from the effective date of termination, and seeking damages based on alternative theories of (1) breach of an implied covenant, (2) promissory estoppel and (3) restitution for unjust enrichment.

Med James asserts that it is entitled to summary judgment on all counterclaims because (1) as a matter of law, it never agreed to pay any termination fee; and (2) alternatively, the Kansas statute of frauds bars any suit to enforce an oral agreement to pay a termination fee; and (3) the alleged agreement is unenforceable under Kansas law as a product of commercial bribery.

## **Analysis**

As a preliminary matter, the Court must determine what state law to apply in this case. In diversity actions, the Court applies the substantive law, including choice of law rules, of the forum state. See Moore v. Subaru of Am., 891 F.2d 1445, 1448 (10th Cir. 1989). Under Kansas choice of law rules, "[t]he law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." Phil. Am. Life Ins. v. Raytheon Aircraft Co., 252 F. Supp.2d 1138, 1142 (D. Kan. 2003). "Generally, the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply." Miller v. Dorr, 262 F. Supp.2d 1233, 1237 (D. Kan. 2003). The parties do not address the choice of law issue. Both sides cite Kansas law in their legal arguments, however, and for purposes of the summary judgment motion, the Court assumes that Kansas law applies.

Med James asserts that it is entitled to summary judgment on defendants' counterclaims because (1) the record contains no evidence that it agreed to pay any termination fee; (2) the Kansas statute of frauds would bar any oral agreement to do so; and (3) the alleged agreement is unenforceable under Kansas law, as a product of commercial bribery.

In order for parties to form a binding contract, there must be a meeting of the minds as to all essential terms. Sidwell Oil & Gas Co. v. Loyd, 230 Kan. 77, 79, 630 P.2d 1107, 1109 (1981). Where the evidence pertaining to the existence of a contract is conflicting, a question is presented for the trier of fact. Augusta Bank & Trust v. Broomfield, 231 Kan. 52, 60, 643 P.2d 100, 107 (1982). Whether the parties entered a binding contract depends on the intention of the parties and is a question of fact. 230 Kan. at 83, 630 P.2d at 1112; Phillips & Easton Supply Co., Inc. v. Eleanor Int'l, Inc., 212 Kan. 730, Syl. ¶ 3, 512 P.2d 379 (1973).

Here, the parties undoubtedly reached an agreement that Ronning would serve as an agent for Med James. The agreement is evidenced by the fact that for five years, Med James paid Ronning a 2.5 per cent commission plus a billing fee for high-risk insurance policies which he marketed. The terms of that agreement – including whether the parties agreed to a termination – are disputed. Because the parties never signed a contract, the jury must resolve any disputes regarding the terms of the parties' oral agreement.

Med James asserts that as a matter of law, Ronning cannot enforce the purported termination agreement because of the (1) the statute of frauds and (2) his fraud in inducing the contract.

The Kansas statute of frauds, K.S.A. § 33-106, requires a writing for contracts that cannot be performed within one year. It provides in relevant part as follows:

> No action shall be brought . . . upon any agreement that is not to be performed within

>   the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing.

For the statute of frauds to apply to an oral agreement, a party must show that "performance could not possibly" have been completed within one year. Augusta Bank & Trust, 231 Kan. at 59-60, 643 P.2d at 106. In other words, the statute of frauds does not prohibit an action upon an oral contract that might have been performed within one year. In re Estate of Hargreaves, 201 Kan. 57, 62, 439 P.2d 378, 382 (1968);; see Midwest Grain Prods., Inc., v. Envirofuels Mktg., Case No. 95-2355-EEO, 1996 WL 445070, at *9-10 (D. Kan. 1996). Med James asserts that the alleged promise to pay Ronning for 12 months beginning 30 days after termination means that the contract could not have been performed within one year. It ignores the fact that the purported contract allowed the parties to terminate it at any time by mutual agreement, if Med James went into liquidation or became subject to serious disciplinary proceedings by a state insurance department, or if Ronning violated the agreement.[3] In these circumstances, the purported contract did not provide for termination pay. Thus, if the parties terminated the contract for any of these reasons within a year after they entered the agreement, the contract could be performed within a year. Defendants have not established that

---

[3] Ronning argues that the doctrine of promissory estoppel takes the agreement outside the statute of frauds. That doctrine may render enforceable a promise upon which the promisor intended, or should have known, the promisee would act to his detriment, and which the promisee does indeed act upon in such a manner, where application of the statute of frauds to that promise would work a fraud or gross injustice upon the promisee. Bittel v. Farm Credit Servs. of Cent. Kan., 265 Kan. 651, 661, 962 P.2d 491, 498-99 (1998); Decatur Coop. Ass'n v. Urban, 219 Kan. 171, Syl. ¶¶ 5, 6, 7, 547 P.2d 323 (1976). Before the doctrine of promissory estoppel can be invoked in a case involving the statute of frauds, the promisee must first show that the parties entered into a valid and otherwise enforceable contract. Id. Because the Court finds that the statute of frauds does not bar enforcement of the purported contract, it need not address the issue of estoppel.

as a matter of law, the statute of frauds bars enforcement of the agreement.

Med James also asserts that Ronning cannot enforce the contract because he engaged in commercial bribery – the kickback to French – in forming the agreement. Kansas law provides that contracts which are part of commercial bribery are not enforceable. See Evco Distr., Inc. v. Brandau, 6 Kan. App. 2d 53, 59, 626 P.2d 1192 (1981). The record contains evidence that Ronning committed commercial fraud by agreeing to give French kickbacks in exchange for an introduction to James. The record also contains evidence, however, that James ratified the contract after he became aware of the fraud. See Vanier v. Ponsoldt, 251 Kan. 88, 106, 833 P.2d 949, 962 (1992) (principal who made payments on transaction after learning of agent's fraud waives right to rescind contract). Med James is not entitled to summary judgment on this issue.

**IT IS THEREFORE ORDERED THAT** Med James, Inc.'s Motion For Summary Judgment On Defendants' Counterclaims (Doc. #11) filed October 27, 2005 be and hereby is **OVERRULED**.

Dated this 17th day of May, 2006 at Kansas City, Kansas.

                                         s/Kathryn H. Vratil
                                         KATHRYN H. VRATIL
                                         United States District Judge